UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| FLORETHA WADE, | : | **CIVIL NO. 1:08-CV-0244** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| C.P. CONVERTERS, INC. t/d/b/a | : | |
| C-P FLEXIBLE PACKAGING and | : | |
| C-P CONVERTERS, | : | |
| | : | |
| Defendant | : | |


## REPORT AND RECOMMENDATION


This case presents a claim of employment discrimination brought by an African American female. Discrimination on the basis of race, gender and age is alleged in the complaint.


The material facts of the case, as summarized[1] in the plaintiff's memorandum of law in opposition to the defendant's motion for summary judgment, Doc. 16, are that the plaintiff is an African American female who was employed by the defendant from July 17, 2001 until December 2006 as a press helper. She reported to Dan Taylor (Second Shift Supervisor), Brad Shermeyer (First Shift Supervisor), and Jim Scherman (Press Department

---

[1] The plaintiff's summarization is essentially adopted herein, but record references are omitted.

Manager).  She worked with pressmen Chuck Patterson, Dave Buss, and Marty Moser.  She was the only female working in her department and the only African American press helper employed by the defendant.  During the course of her employment, the plaintiff perceived herself to be subjected to a pattern of harassment by her co-workers and supervisors based upon her race and her gender.  Mr. Shermeyer refused to hand plaintiff her paychecks, as he did for all other employees, but rather threw her check at her computer.  Mr. Shermeyer also followed her around, yelling at her.  He did not yell at any other employees. Mr. Shermeyer treated the plaintiff like she was of less value than her co-workers.  She was also supervised by Chad Brenneman. The plaintiff overheard Mr. Brenneman calling her a "witch."

On September 21, 2006, the plaintiff was placed on probation, accused of violating the defendant's attendance policy.  She denies that there was a violation.  She had been disciplined on August 24, 2006 for missing work to attend a meeting with Children & Youth Services, a meeting that she had received permission to attend from Chad Brenneman.  She had told Mr. Brenneman that if the meeting did not end in time for her to return to work, she would call him, and he said "OK." That meeting ran longer than expected and someone from Children &

2

Youth Services called defendant to advise that plaintiff would
not be returning to work.  Even though she followed the orders
that she had received, she was still issued a disciplinary
notice.  She was never shown that notice.  A Final Written
Warning as to her employment was issued on September 20, 2006.
She was never shown this warning.  On September 21, 2006, she
was placed on probation for having missed work on September 16,
2006.  She had told Mr. Brenneman that she would not be in on
September 16, 2006.  He did not tell her that she was expected
to be at work on that day.  Nevertheless, the following Monday,
she was placed on probation.

On December 4, 2006, the defendant terminated the
employment of the plaintiff.  She was filed for allegedly
failing to wear her safety goggles while at work.

In October 2006, the plaintiff's prescription safety
glasses had become broken.  After that occurred, she had been
instructed by Ryan Smith (Safety Manager) to wear her
prescription glasses with side shields.  Another employee who
worked with the plaintiff as a pressman, who is a Caucasian,
also wore prescription glasses with side shields.  Shortly after
being instructed by Safety Manager Smith to wear her regular

3

glasses with side shields, the plaintiff had a conversation with Mr. Scherman, Mr.Shermeyer, and Mr. Smith in the hallway.  She was told that she could no longer wear the side shields, but had to wear goggles that covered her prescription glasses.  She was not given a written warning about not wearing her safety goggles, and she was not told that she could be terminated if she did not wear her safety goggles.

On December 1, 2006, when returning from a break, the plaintiff was preparing to put on her safety goggles.  It was customary for all of the employees in her area to leave their eye protection on a table when going on break.  Before she could put on her goggles, Mr. Shermeyer yelled at the plaintiff, "Floretha! Where are your safety glasses?"  She told Mr. Shermeyer that she was just returning from break and was about to put them on.  Both the Caucasian pressman and Peppy, an Hispanic press helper, had also placed their glasses on the table when they went to break.  No other employee was disciplined for not wearing their eye protection on that day.

On December 4, 2006, the plaintiff was terminated.  She had never been given a written warning based upon the December 1, 2006 incident.

Marty Moser, a Caucasian pressman with whom plaintiff worked, who also had been on probation for violations of the attendance policy, was not terminated from his employment when, on April 16, 2007, he committed a subsequent infraction.  He received an Employee Conference Form, in which defendant wrote:

> **Incident Details** (Attach additional sheet if required):marty(*sic*)did not correctly check the printable side of the film on order 471533 and this resulted in 828 lbs of bad film. The print was not on the treated side of the film.
>
> **Action Steps Discussed or Planned:** I reviewed with Marty that this was a careless act that could have resulted in a written warning, in turn, could have resulted in his termination since he is on probation status for attendance. I made sure that he understood that any written warning could result in this.  It does not have to be related to attendance even though it is probation due to poor attendance. he(*sic*)said he understood and would not do it again.

After the plaintiff was terminated, she was replaced by a male who is not African American.

The defendant states that it is not in dispute that the plaintiff was employed by the defendant from July 2000 to

5

December 2006, that she was discharged in December 2006 for
failure to wear her safety glasses, that she was on the shop
floor without her safety glasses on the date of her termination,
that the defendant has a safety policy that provides for
discipline up to and including termination for violation of the
policy, that at the time of the plaintiff's discharge she was on
probation for attendance violations, and that the defendant's
attendance policy provides for discharge if an employee has an
occurrence or a written warning while on probation.  The
defendant acknowledges that the plaintiff presented the names of
persons who, she believes, were treated better than she was.
The defendant acknowledges that one of those comparators, Marty
Moser, was counseled, like the plaintiff, that while on
probation any written warning could result in termination.  The
defendant observes that all of the plaintiff's named comparators
in this matter have been disciplined or discharged during their
tenure with the defendant.  The defendant also notes that it had
an anti-harassment policy in effect during the plaintiff's
employment and that the plaintiff never complained pursuant to
the policy of improper treatment from her supervisor.  The
defendant also states that it is not in dispute that the
plaintiff had been warned before her termination about her non-

6

compliance with the defendant's policy with regard to safety glasses.

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

A material factual dispute is a dispute as to a factual
issue that will affect the outcome of the trial under governing
law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
"Only disputes over facts that might affect the outcome of the
suit under the governing law will properly preclude the entry of
summary judgment." *Id.*

Summary judgment is not appropriate when there is a
genuine dispute about a material fact. *Id.* at 248.  An issue of
fact is "'genuine' only if a reasonable jury, considering the
evidence presented, could find for the non-moving party."
*Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988).  "Where
the record taken as a whole could not lead a rational trier of
fact to find for the non-moving party, there is no 'genuine
issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith
Radio Corp.,* 475 U.S. 574, 587 (1986).  "If the evidence is
merely colorable . . . or is not significantly probative . . .
summary judgment may be granted." *Anderson, supra,* 477 U.S. at
249-50.  In determining whether a genuine issue of material fact
exists, the court must consider all evidence in the light most
favorable to the non-moving party.  *White v. Westinghouse
Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

8

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249.  The proper inquiry of the court in connection with a motion for summary judgement "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

9

The parties have both argued this case as a pretext case to which the burden-shifting framework *of McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1972), applies.  "This framework has three steps: (1) the plaintiff bears the burden of establishing a *prima facie* case of discrimination; (2) the burden then shifts to the defendant, who must offer a legitimate non-discriminatory reason for the action; and (3) if the defendant satisfies this burden, the plaintiff must then come forth with evidence indicating that the defendant's proffered reason is merely a pretext."  *McNemar v. Disney Store, Inc.,* 91 F.3d 610, 619 (3d Cir. 1996).

There is no rigid formulation of a prima facie case under McDonnell Douglas and the requirements may vary with different factual situations.  *Matczak v. Frankford Candy & Chocolate Co.,* 136 F.3d 933, 938 (3d Cir. 1997).  Basically, a *prima facie* case is comprised of the following four elements: (1) the plaintiff belongs to the protected class; (2) the plaintiff was qualified; (3) the plaintiff was rejected or fired; and (4) after the rejection or firing, the employer sought applicants with the plaintiff's qualifications. *Id.* at 939.  As an alternative to the fourth element, a plaintiff can show that the position was filled with a person not belonging to

10

the protected category. *Id.*; *Olson v. General Elec. Astrospace,*
101 F.3d 947, 951 (3d Cir. 1996).

The defendant does not argue that the plaintiff can not
establish a prima facie case of racial and gender
discrimination. Rather, the defendant assumes that the
plaintiff can make out a *prima facie* case and argues that it had
legitimate non-discriminatory reasons for the plaintiff's
discharge. We will also assume for purposes of this summary
judgment motion that the plaintiff can establish a *prima facie*
case.

If a plaintiff establishes a *prima facie* case, the
burden of production shifts to the defendant to articulate some
legitimate nondiscriminatory reason for the adverse employment
decision. *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir. 1994).
An employer satisfies its burden of production by introducing
evidence which would permit the conclusion that there was a
nondiscriminatory reason for the unfavorable employment
decision. *Id.* "The employer need not prove that the tendered
reason actually motivated its behavior, as throughout this
burden-shifting paradigm the ultimate burden of proving
intentional discrimination always rests with the plaintiff." *Id.*

11

The defendant's evidence supports an inference that the plaintiff was fired for a safety glasses violation committed while she was on probation for an attendance violation.

The defendant has articulated non-discriminatory reasons for the plaintiff's discharge.

Once the defendant meets its relatively light burden by articulating a legitimate reason for the discharge, the burden of production rebounds to the plaintiff.  To defeat summary judgment the plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.  *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994).  To avoid summary judgment, "the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a fact finder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id.* (citations omitted).  "To discredit the employer's proffered

reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether a discriminatory animus motivated the employer, not whether the employer is 'wise, shrewd, prudent, or competent.'" *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 331 (3d Cir. 1995).  Rather, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reasons that a reasonable fact finder could rationally find the proffered reasons unworthy of credence and infer that the employer did not act for those asserted reasons. *Fuentes, supra,* 32 F.3d at 765.

Having considered the summary judgment documentation and arguments, we conclude that a reasonable fact finder could rationally infer that the employer did not act for the reason asserted.

The plaintiff asserts that there is a genuine factual dispute as to whether the safety glasses basis for her termination was pretextual.  We agree with this assertion. Another white male employee on probation failed to ascertain the printable side of film in filling an order and destroyed 828

13

pounds of film as a result of his careless error.  He was not
terminated, but was told to be more careful.  On the day when
the plaintiff was found to have failed to wear her glasses, she
and two other employees had taken off their safety glasses and
had placed them in the same place.  Only one employee, the
plaintiff, was cited and disciplined for failing to wear her
safety glasses even though she engaged in materially the same
conduct as the other two employees.  Also, the plaintiff asserts
that she was not in fact on the floor without her glasses.
Also, it was not a self-apparently meritorious reason for
termination that the safety glasses infraction occurred when the
plaintiff was on probation in that her probation was based upon
an attendance infraction but yet she was not terminated for an
attendance infraction.

        The plaintiff also provides a basis for the court to
find that there is a genuine dispute as to whether her placement
on probation was merited.  She had been excused by Chad
Brenneman from work to attend a meeting with the Children and
Youth Services agency.  She had told him that she would call him
if the meeting had not ended in time for her to return to work.
As it unfolded, the meeting ran longer than expected.  She
understood that someone from Children and Youth called the

defendant to inform that the plaintiff would not return to work. She was issued a disciplinary notice despite, she asserts, having done what had been discussed and approved by Mr. Brenneman.

The plaintiff was replaced by a male who is not African American, according to her summary judgment evidence.

There are material questions of fact in dispute and, accordingly, the defendant's motion for summary judgment should be denied as to the claims of the plaintiff that she was discriminated wrongfully against on the basis of her gender and on the basis of her race.  She no longer claims discrimination on the basis of her age.

It is recommended that the claim of age discrimination be dismissed and that the defendant's motion for summary judgment be denied.


                                        /s/ J. Andrew Smyser
                                        J. Andrew Smyser
                                        Magistrate Judge


Dated:  January 15, 2009.

                              15